IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERRANCE GADSON, BRACY C. DIXON, JR., FRED COOPER, and COREY FERRELL, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 05-479-SLR ) |
| CITY OF WILMINGTON FIRE DEPARTMENT, | ) ) ) ) |
| Defendant. | ) |

Terrance Gadson, Bracy C. Dixon, Jr., and Corey Ferrell, Wilmington, Delaware; Fred Cooper, Parksburg, Pennsylvania. Pro se Plaintiffs.

Andrea Jeane Faraone, Esquire, City of Wilmington Law Department, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: March 19, 2007
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On July 11, 2005, Gallant Blazer, Inc. ("Gallant Blazer"), James R. Jobes ("Jobes"), Terrance Gadson ("Gadson"), Bracy C. Dixon, Jr. ("Dixon"), Fred Cooper ("Cooper"), Anel Collins ("Collins"), and Corey Farrell ("Farrell"), acting pro se, filed suit against the City of Wilmington Fire Department ("defendant"), claiming employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). (D.I. 1) On March 13, 2006, the court dismissed the complaint without prejudice to renew, finding that the plaintiffs had failed to effect service of process within 120 days after filing their complaint. (D.I. 3) Dixon, Gadson, and Farrell subsequently filed a motion for reconsideration (D.I. 4), which the court granted on June 14, 2006 (D.I. 8). In the meantime, Jobes and Collins filed a motion to withdraw from the action (D.I. 5), which the court also granted (D.I. 8). Because a corporation may not act as a pro se litigant, the court's memorandum order of June 14, 2006 gave Gallant Blazer 30 days in which to obtain counsel (id. at 4); on August 9, 2006, the court terminated Gallant Blazer as a plaintiff for failure to comply with this order, leaving Gadson, Dixon, Cooper, and Farrell ("plaintiffs") as the remaining plaintiffs in the action at bar.

Presently before the court is defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), filed June 26, 2006. (D.I. 9) On August 10, 2006, the court issued a scheduling order setting September 11, 2006 as the deadline for plaintiffs to respond to defendant's motion. (D.I. 15) Plaintiffs did not file such a response. The court has

jurisdiction over this action pursuant to 28 U.S.C. § 1331. For the reasons stated below, the court will grant defendant's motion to dismiss.

## II. BACKGROUND

On April 12, 2004, Jobes, who identified himself as "President of Gallant Blazers, Inc., an association of Wilmington's Black and Hispanic firefighters," filed a charge of discrimination against defendant with the Delaware Department of Labor ("DDOL"). (D.I. 11 at A-28) Therein, Jobes

> allege[d] that Wilmington's Black and Hispanic firefighters, as a whole, are being discriminated against in violation of [Title VII]. [He] contend[ed] that (1) Blacks and Hispanics are disciplined more severely than Whites for similar work rule violations, (2) [defendant] fails to apply its "random" drug testing policy to Blacks and Hispanics in the same manner it is applied to Whites and uses more frequent drug tests to harass Blacks and Hispanics, and (3) [defendant's] hiring and promotional policies and practices have a disparate impact upon Blacks and Hispanics, whose opportunities to obtain positions within the Fire Department and to seek advancement within the Department [are] hindered by rules which favor Whites and favoritism shown toward Whites regarding promotion.

(Id.) The Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue letter ("NRS letter") on April 20, 2005, giving Jobes 90 days within which to file suit; Jobes filed the complaint at bar within the allotted time. (Id. at A-29; D.I. 1) The other plaintiffs in the instant litigation were not named as parties to either Jobes' charge of discrimination or his NRS letter.

The complaint, which was signed only by Jobes but lists plaintiffs in the caption, "allege[s] that Wilmington's Black and Hispanic Firefighters as a whole are being discriminated against in violation of [Title VII]. [Plaintiffs] contend that Blacks and Hispanics are disciplined more severely than whites for similar work rule violations. [Defendant's] hiring and promotional policies have a disparate impact upon Blacks and

2

Hispanics." (D.I. 1 at 2) Plaintiffs allege that said racial discrimination is ongoing. (Id. at 1) In the section of the standardized complaint form which asks what relief is requested, plaintiffs wrote that such relief "[would] be determined at a later date." (Id. at 3)

Defendant avers that plaintiffs have failed to state a claim upon which relief can be granted because (1) they have not exhausted the proper administrative remedies; and (2) defendant, an unincorporated municipal department, is not a separate entity from the City of Wilmington and, therefore, cannot be sued. Defendant also contends that Title VII's statutory cap on damages limits plaintiffs' potential recovery to $300,000, and that Title VII prohibits an award of punitive damages. (D.I. 10 at 3-5)

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972); Gibbs v. Roman, 116 F.3d 83, 86 n.6 (3d Cir. 1997); Urrutia v. Harrisburg County Police Dep't,

3

91 F.3d 451, 456 (3d Cir. 1996). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

In order to file suit under Title VII, a complainant must first lodge a charge of discrimination with either the EEOC or the agency in his or her state responsible for investigating allegations of employment discrimination.

> [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . .

42 U.S.C. § 2000e-5(e). If the EEOC decides not to pursue the charge, it "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved." Id. § 2000e-5(f)(1). Jobes' DDOL filing stated that the discrimination of which he complained began on June 2, 2003, and continued up to March 8, 2004. (D.I. 11 at A-28) Because these events began less than 300 days before Jobes complained to the DDOL on May 28, 2004, they were not time-barred. Upon receipt of his NRS letter, Jobes had properly exhausted his administrative remedies and was entitled to file suit within 90 days, which he did.

Jobes' DDOL charge and NRS letter make no mention of plaintiffs. The only document attached to the complaint is Jobes' NRS letter and, other than the complaint's completely unsupported assertion that "[p]laintiff(s) filed charges with the EEOC" (D.I. 1 at 2), there exists no evidence of record supporting the notion that any of

4

the remaining plaintiffs filed a charge of discrimination or received an NRS letter in connection with this case.[1] Defendant argues that, even if plaintiffs attempt to cure this error by filing the appropriate DDOL charges now, they are time-barred from doing so, as more than 300 days have passed since the acts in question occurred.[2] (D.I. 10 at 9) Likewise, defendant avers, plaintiffs cannot escape the exhaustion requirement by relying on the doctrine of equitable tolling; allegations of continuing violations; or the single filing rule. (Id. at 9-13) The court agrees with defendant that plaintiffs are now time-barred from attempting to exhaust the required administrative remedies; consequently, unless some exception to this rule[3] applies to the facts at bar, plaintiffs'

---

[1]The court notes that, on December 1, 2003, Dixon filed a charge of discrimination against the City of Wilmington and several officials from the Wilmington Fire Department (Chief James Ford, Deputy Chief Willie Patrick, and Battalion Chief George Cunningham), alleging that the defendants had prevented him from receiving training and overtime; denied him promotions in favor of less-qualified white employees; and retaliated against him because of his race. (D.I. 10 at A-31 to A-32) Dixon received his Notice of Right to Sue on May 28, 2004 (id. at A-40), but did not file his Title VII suit until May 24, 2006. See Dixon v. City of Wilmington, Civ. No. 06-344-SLR, 2007 WL 704912 (D. Del. Mar. 5, 2007). On March 5, 2007, the court dismissed Dixon's claim as time-barred, because he had not initiated litigation within 90 days of the issuance of an NRS letter from the EEOC, as required by statute. See id. at *1-*2.

The administrative charge of discrimination filed by Dixon, as well as the related NRS letter, were issued in Dixon's name only. Unlike the complaint at bar, which alleges discrimination against Black and Hispanic firefighters as a group, Dixon's charge was aimed primarily at certain members of the Fire Department, and alleged that Dixon had suffered racial discrimination as an individual. Indeed, by the time Dixon filed the lawsuit arising from his individual charge of discrimination in 2006, he had been a party to the complaint at bar for almost a year, indicating that Dixon himself regarded the two lawsuits as covering separate and distinct claims.

[2]As defendant points out, even if one were to assume that the events of which plaintiffs complain took place as recently as July 11, 2005 (the date the suit at bar was filed), that 300 day window has long since passed.

[3]The United States Supreme Court has held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court,

5

claim must be dismissed under Rule 12(b)(6). While plaintiffs, by virtue of their failure to respond to defendant's motion, have not raised any potentially applicable exceptions to the 300-day statute of limitations, defendant has identified (and endeavored to refute) three. The court will address each of these exceptions in turn.

### A. Equitable Tolling

"Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999) (citing Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998); Naton v. Bank of Cal., 649 F.2d 691, 696 (9th Cir. 1981); Mathews v. Little, Civ. A. No. 92-CV-1114, 1992 WL 192542, at *2 (E.D. Pa. July 31, 1992)). Nothing in the evidence of record suggests the existence of "inequitable circumstances"[4] which might justify the use of equitable tolling, a remedy which "should

---

but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. TWA, Inc., 455 U.S. 385, 393 (1982). According to the United States Court of Appeals for the Third Circuit, "[o]ne such equitable exception to the timely filing requirement is the continuing violation theory." West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).

[4]According to the Third Circuit,

[t]here are three principal situations in which equitable tolling is appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

Podobnik v. USPS, 409 F.3d 584, 591 (3d Cir. 2005) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)).

be applied 'sparingly,'" Podobnik v. USPS, 409 F.3d 584, 591 (3d Cir. 2005) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Consequently, plaintiffs may not avoid Title VII's exhaustion requirement through use of this doctrine.

### B. Continuing Violations

Under the theory of continuing violations, "[a] plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (citing Bronze Shields, Inc. v. N.J. Dep't of Civil Serv., 667 F.2d 1074, 1081 (3d Cir.1981); Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981)).

> To establish that a claim falls within the continuing violations theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period . . . . Next, the plaintiff must establish that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.

Id. at 754-55 (quoting Jewett, 653 F.2d at 91). The Third Circuit has stated that it finds the Fifth Circuit's approach,

> providing a non-exhaustive list of factors, to be helpful. Following the [Fifth Circuit], the inquiry into the existence of a continuing violation would consider: (I) subject matter – whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence – whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Id. at 755 n.9 (quoting Martin v. Nannie & Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993) (citing Berry v. Bd. of Supervisors of LSU, 715 F.2d 971, 981 (5th Cir. 1983))).

"Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory . . . , the 300-day filing period becomes irrelevant – as long as at least one violation has occurred within that 300 days." Id. at 755. "[D]iscrete discriminatory acts are not actionable if time barred, [however,] even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (emphasis added).

In analyzing the differences between continuing violations and discrete acts, the Third Circuit stated that

> Morgan provides fairly precise guidance as to what sorts of acts are "discrete." The Court first observes that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," then lists the discrete acts in the case before it . . . .
> We can thus take from Morgan the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, **failure to promote**, denial of transfer, **refusal to hire**, wrongful suspension, **wrongful discipline**, denial of training, **wrongful accusation**.

O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (alteration in original) (emphasis added) (quoting Morgan, 536 U.S. at 114). The complaint at bar alleges disparate treatment in defendant's imposition of discipline, as well as "hiring and promotional policies and practices" which have a disparate impact upon defendant's Black and Hispanic employees (D.I. 1 at 2); "[a]pplying the Morgan distinction to [plaintiffs'] allegations listed above, . . . it is apparent that nearly all of them fall into the category of discrete acts. Accordingly, under Morgan, they cannot be aggregated under a continuing violations theory." O'Connor, 440 F.3d at 127. Therefore, the statute of limitations on the acts underlying plaintiffs' claims began to run at the time

8

those acts occurred. As discussed above, plaintiffs have not filed the necessary administrative charges with the DDOL or EEOC. Even assuming generously, for the sake of argument, that the final discrete act related to the case at bar occurred on the day plaintiffs filed their complaint, the 300-day statute of limitations for filing an administrative charge would have run on or about May 7, 2006.

### C. Single Filing Rule

The Third Circuit has stated that,

> [u]nder the single filing rule doctrine, a plaintiff who has not filed an EEOC charge within the requisite time period can join a class action without satisfying [the] requirements – exhaustion and filing – if the original EEOC charge filed by the plaintiff who subsequently filed a class action had alleged class based discrimination in the EEOC charge.

Commc'ns Workers of Am. v. N.J. Dep't of Personnel, 282 F.3d 213, 217 (3d Cir. 2002) (citing Lusardi v. Lechner, 855 F.2d 1062, 1077-78 (3d Cir.1988)). It is clear from the evidence of record that none of the plaintiffs in the case at bar filed their own administrative charges; therefore, in order to use the single filing rule to join themselves with Jobes' properly-filed administrative charge, plaintiffs must show that said charge "alleged class based discrimination." Id. The Third Circuit, in determining whether those who make use of the single filing rule must file suit as a class action, held that

> [t]his Court's decision in Whalen v. W.R. Grace & Co., 56 F.3d 504 (3d Cir.1995)[,] is dispositive. In Whalen, certain plaintiffs who had not filed an EEOC charge and who sought to piggyback in an action filed by plaintiffs who had filed a broad EEOC charge sought to take advantage of the single filing rule. We held that "our case law requires that, outside the context of a representative or class action, . . . an individual plaintiff must file a timely administrative charge." Moreover, and most relevant here, we stated that Lusardi did not hold that "filing a charge with allegations broad enough to support a subsequent class action lawsuit alleviates the burden of filing the class action itself, with the attendant requirement of class certification." We concluded that **if "plaintiffs choose to bring suit**

9

**individually, they must first satisfy the prerequisite of filing a timely EEOC charge."**

Commc'ns Workers of Am., 282 F.3d at 217-18 (omission in original) (emphasis added) (quoting Whalen, 56 F.3d at 505, 507). Plaintiffs did not file their complaint as a class action; therefore, they may not use the single filing rule to avoid Title VII's exhaustion requirement.

Having reviewed all the evidence of record, the court finds that, even when accepting as true all of the material allegations in the complaint and construing the reasonable inferences therefrom in plaintiffs' favor, plaintiffs have failed to exhaust the administrative remedies required by the language of Title VII and are thus time-barred from pursuing the allegations of discrimination contained in their complaint. Defendant's motion to dismiss (D.I. 9) is granted.[5]

## V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted. An appropriate order shall issue.

---

[5] Having found that plaintiffs' claim is time-barred, the court will not address the merits of defendant's arguments regarding statutory limitations on damages or its contention that, as a department of the City of Wilmington, it has no separate juridical existence and is not amenable to suit.

10